FILED

2018 MAY -2 PM 3: 11

BARBARA A. WIEDENBEIN
CLERK OF COMMON PLEAS COURT
CLERMONT COUNTY, OH

IN THE COURT OF COMMON PLEAS
FOR CLERMONT COUNTY, OHIO

JUDGE McBRIDE

VINCENT LUCAS,
P.O. Box 272
Amelia, OH 45102
Plaintiff,

v.

JASJIT GOTRA
375 Shippee Rd.
East Greenwich, RI 02818,

DEFEND AMERICA, LLC
Serve officer:
Jessica T. Merrick
1030 7th St. Apt. 1
Wabasha, MN 55981,

JESSICA T. MERRICK
1030 7th St. Apt. 1
Wabasha, MN 55981,

RICK A. MERRICK
1030 7th St. Apt. 1
Wabasha, MN 55981,

TYLER COON
address unknown,

JOHN DOE COMPANIES
address unknown

JOHN DOE(S)
address unknown,

Defendants.

Case No. 2018 CVC 00696 JUDGE MCBRIDE

This is a refiled case with respect to only defendants Defend America, LLC, Jessica T. Merrick, Rick A. Merrick, and Tyler Coon. The prior case was assigned to Judge McBride

**COMPLAINT**

**1. Violation of the Federal Telephone Consumer Protection Act (47 U.S.C. § 227, 47 CFR § 64.1200)**

**2. Violation of the Federal Credit Reporting Act (15 U.S.C. § 1681)**

**3. Violation of the Ohio Telemarketing Act (Ohio Rev. Code § 109.87) and Ohio Telephone Solicitation Act (Ohio Rev. Code § 4719)**

**4. Violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345)**

**5. Invasion of privacy by unreasonable intrusion**

**6. Pattern of corrupt activity (Ohio Rev. Code §§ 2923.31 - .34)**

JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims herein pursuant to Ohio Rev. Code § 2305.01. This venue is appropriate because all the telephone calls described in the following paragraphs were received in Clermont County, Ohio. There are questions of law common to each of the Defendants.

2. Each Defendant regularly does or solicits business in Ohio.

3. Each Defendant caused tortious injury by violating the Telephone Consumer Protection Act ("TCPA") and Ohio Consumer Sales Practices Act ("OCSPA") and so acted with the purpose of causing injury to persons (e.g. invasion of the right to privacy), and each Defendant might reasonably have expected that some person would be injured by the act in this state.

FACTS

4. In July 2002, Cincinnati Bell assigned the phone number (513) 947-1695 to my residential telephone line in Amelia, Ohio. That phone number has been assigned to my residential phone line ever since.

5. The phone number (513) 947-1695 is on the national Do Not Call registry (http://donotcall.gov) and has been since July 1, 2003.

6. I have not given the Defendants express invitation or permission to call me. I did not have an "established business relationship" with any of the Defendants, as that term is defined in 47 U.S.C. § 227(a)(2) and 47 CFR § 64.1200(f)(4), prior to any of the telephone calls that are the subject of this lawsuit.

7. Each call that is the subject of this lawsuit was made to my residential telephone line (513) 947-1695.

ILLEGAL TELEMARKETING CALLS BY OR ON BEHALF OF THE DEFENDANTS

8. Since March 2015, I have received 51 illegal telemarketing calls by or on behalf of both Monitronics International, Inc. ("Monitronics") and Alliance Security, Inc. ("Alliance" or "Alliance Security").

9. Jasjit Gotra ("Gotra") is the founder and Chief Executive Officer of Alliance Security, and owns 62% of Alliance Security. At all relevant times, Gotra had complete control over Alliance Security. Gotra is being sued as an individual and is personally liable for the actions of Alliance Security, Inc. alleged herein.

10. Gotra personally formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Alliance Security, Inc. set forth in this complaint.

11. The "JOHN DOE COMPANIES" are companies who identities are unknown at this time who made telemarketing calls that are complained of in this lawsuit.

12. The "JOHN DOE(S)" defendants are other agents, officers, employees, and representatives of Alliance Security or the John Does Companies, whose identities are unknown at this time, who personally participated in, authorized or controlled the wrongful actions of Alliance Security or the John Doe Companies that are complained of in this lawsuit.

13. I could not discover the names of the John Doe Companies and John Doe defendants.

14. On 3/10, 3/14, and 3/27 of 2015, I received telephone calls on behalf of Monitronics and Alliance Security in order to sell me an alarm system and alarm monitoring services.

15. On 5/6/15 and 5/13/15, I received telephone calls on behalf of Monitronics and Alliance Security. My caller ID displayed the same originating telephone number during both calls. The purpose of the calls was to sell me alarm monitoring services. The 5/13/15 call started with a pre-recorded message offering to provide a "free" home alarm system. After answering a series of questions, the interactive voice response system allowed me to speak with a live sales representative. The sales representative said that he represents "Home Security Center" and the installation of the security system was at "no cost", but I would be required to pay Monitronics for an alarm monitoring contract. The alarm system would be installed by Alliance Security. The caller said that I could call him back at (888) 336-9616.

16. In truth, the company "Home Security Center" does not exist. "Home Security Center" is a fictitious entity made up by Alliance Security, Monitronics, and/or Defend America LLC.

17. The telephone number (888) 336-9616 was assigned to Defend America LLC on the date of the call. Defend America LLC initiated the calls on 5/6 and 5/13/15.

18. Defend America LLC initiated the 5/6 and 5/13/15 calls on behalf of Alliance Security and Monitronics. Defend America LLC was acting as an agent of Alliance Security and Monitronics and within the scope of its authority as agent.

19. Jessica T. Merrick, Rick A. Merrick, and Tyler Coon were officers of Defend America LLC on the date of the call.

20. Jessica T. Merrick, Rick A. Merrick, and Tyler Coon personally formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defend America LLC set forth in this Complaint.

21. On 6/1/15, I received another telephone call initiated with an artificial or pre-recorded voice. After answering a series of questions, the interactive voice response system allowed me to speak with a live sales representative. The sales representative said that they were offering a "free" alarm system, but I would be required to pay Monitronics for an alarm monitoring contract. The representative said that the alarm system would be installed by "Alliance". The representative also admitted that they had called me at least once in the week prior to this call. The caller said that I could call her back at (877) 323-1599. The caller claimed that the name of her company is "General Electric Security Pro".

22. In truth, "General Electric Security Pro" is not the true name of the caller and the caller did not have permission from General Electric to use its name.

23. The caller initiated the call on behalf of Alliance Security and Monitronics. The caller was acting as an agent of Alliance Security and Monitronics and within the scope of its authority as agent.

24. On information and belief, the same caller initiated at least one other call on behalf of Alliance Security and Monitronics, as their agent, between 5/24/15 and 5/30/15. The purpose of the call was to sell me alarm monitoring services provided by Monitronics, using an alarm system installed by Alliance Security.

25. On 6/25/15, I received another telephone call initiated with an artificial or pre-recorded voice. The voice said that the company responsible for the calls is "Home Security Center". In truth, the call was initiated by Alliance Security and Monitronics, or on their behalf by someone acting as their agent. The purpose of the call was to sell me alarm monitoring services.

26. On 7/7/15, I received another telephone call initiated with an artificial or pre-recorded voice. The voice said that they would be "in my area" to install "free" alarm systems. I asked what company the caller represents, and a representative said "Home Security Center". I asked for a number to call the company back at, and the representative said they could not accept incoming calls. The representative offered to call me at another time, and I said no, don't do that. I said I wanted to speak to a specialist. I was transferred to another representative. The representative said that in order to receive the "free" alarm system, I must pay for an alarm monitoring contract. The purpose of the call was to sell me alarm monitoring services. I asked what company the salesperson represents. He said that Monitronics is the alarm monitoring company. I asked if that is the company who he represents. The salesperson seemed unsure and said that the call was "a joint effort of several companies". I asked what company is responsible for the call, and the salesperson hung up. The caller initiated the call on behalf of Monitronics and Alliance Security. The caller was acting as an agent of Alliance Security and Monitronics and within the scope of its authority as agent.

27. On 8/10/15, 8/12/15, 1/20/16, 2/17/16, 2/18/16, 2/24/16, 3/4/16, 3/23/16, 4/16/16, 8/6/16, 8/9/16, 8/11/16, 8/13/16, 8/25/16, 9/7/16, 9/26/16, and 10/3/16, I received calls by or on behalf of Monitronics and Alliance Monitoring the purpose of which was to sell me alarm monitoring services.

28. The 8/12/15, 2/17/16, 2/18/16, 3/4/16, 3/23/16, 4/16/16, 8/9/16, 8/25/16, 9/26/16, and 10/3/16 calls were initiated with an artificial or prerecorded voice.

29. During the 2/17/16, 3/4/16, and 8/9/16 calls, the caller claimed that the name of the company that initiated the call is "Home Security Center".

30. During the 2/18/16, 3/23/16, and 4/16/16 calls, the caller claimed that the name of the company that initiated the call is "Home Protection Services".

31. During the 8/11/16 call, the caller claimed that the name of the company that initiated the call is "Security Solutions".

32. During the 10/3/16 call, the caller claimed that the name of the company that initiated the call is "GE Home Security".

33. During the 10/3/16 call, I agreed to schedule a time for someone to come to my residence to discuss installing a home security system. The cost of the alarm monitoring would be $49.99 per month for five years. After I agreed to schedule an appointment, I received calls confirming that Monitronics would provide the monitoring service and that Alliance Security would do the installation.

34. On 10/5/16, I received a prerecorded call by or on behalf of Monitronics and Alliance Monitoring the purpose of which was to sell me alarm monitoring services. Although a business relationship was established during the 10/3/16 call, I did not consent to receive calls initiated with an artificial or prerecorded voice. Thus the call violated 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)(3). After the prerecorded message, I talked to a live sales representative. The company that initiated this call was different than the company that initiated the 10/3/16 call. The sales representative was unaware of the 10/3/16 call and the prior scheduled appointment and offered alarm monitoring services for $45 per month. The caller said that Monitronics would provide the alarm monitoring service and that Alliance Security would do the installation. I agreed to schedule an appointment.

35. On 10/7/16, an installer came to my residence. The installer was carrying a lawn sign that said "alliancesecurity.com 1-877-7GO-ALLY" and a security system manufactured by 2 Gig Technologies. I asked to see a copy of the written contract. The installer said that he did not have a copy of the written contract and that he could not give me a copy of the contract until after the installation was done. He said that the contract would be emailed to me after the installation. I told him that I would not let him proceed any further until I see a copy of the written contract. The installer said he would try to pull up a copy of the written contract on his tablet computer, but he could not give me a copy or email it to me until after the installation. However, the installer had a very difficult time pulling up a copy of the contract on his tablet. The installer called several people for assistance. After at least twenty minutes, the installer was able to get a copy of the written contract for me to read on the tablet. At the top of the contract appeared "Alliance Security" as the party offering the contract. I told the installer that I wanted a copy of the contract to be emailed to me prior to doing installation. The installer was unable to do that. I told the installer that the experience made me uncomfortable with proceeding further and ended the appointment.

36. Subsequently, a sales representative called me and agreed to email me a copy of the written contract. On 11/18/16, the sales representative emailed me the contract. From the email, it is clear that the sales representative spoke to someone at Alliance Security to obtain the contract. The contract indicates that agreement is between Alliance Security and the home owner.

37. On 11/19/16, I sent an email to Alliance Security demanding that my number 5139471695 be put on their Do Not Call list. Thus, any business relationship that existed by virtue of scheduling an appointment on 10/3/16 was explicitly terminated.

38. On 11/21/16, I received a reply back from Alliance Security saying that my number had been added to their Do Not Call list, but claiming that they did not see any sales calls associated with my number. I replied back that my Do Not Call request "also applies to all your agents, representatives, vendors, contractors, and so forth, anyone who makes calls on your behalf." Alliance Security replied back on 11/21/16 saying that all of Alliance Security's "dealers or lead providers" would receive my Do Not Call request, but that it would take "up to 72 hours to process."

39. Nevertheless, the calls resumed. On 12/12/16 and 2/1/17, I received a call by or on behalf of Monitronics and Alliance Security, the purpose of which was to sell me alarm monitoring services.

40. On 3/16/17, I received a call by or on behalf of Monitronics and Alliance Security, the purpose of which was to sell me alarm monitoring services. My caller ID indicated that the call came from 513-734-5004. The call was initiated with an artificial or prerecorded voice. After listening to the prerecorded message, I spoke to a sales representative. The sales representative said that the company initiating the call is "GE Security Pros" and offered alarm monitoring service by Monitronics for $44.95 per month and said that Alliance Security would do the installation. I asked him if his company is a division of General Electric and he said that it is. The representative attempted to get me to schedule an appointment to do an installation but I refused. The representative offered to call me back later, and I said no, instead of you calling me, I will call you if I am interested.

41. In truth, the company claiming to be "GE Security Pros" is not a division of General Electric and does not have the permission of General Electric to represent itself as part of General Electric.

42. I received more calls from 513-734-5004 on 3/20, 3/23 twice, 3/24, 3/29, 4/4, 4/5, and 4/6 twice of 2017.

43. I got so fed up with the calls that on 4/6/17 I changed the outgoing message on my telephone answering machine to give an explicit Do Not Call request. The outgoing message was changed to the following:

> You have reached the residential telephone line of Vincent Lucas. If you are calling to make a telephone solicitation, put this number on your Do Not Call list. This machine will start recording at the tone.

44. Nevertheless, the calls continued. In fact, the call frequency seemed to intensify after I added an explicit Do Not Call request to my answering machine outgoing message. I received calls from 513-734-5004 on 4/7, four times on 4/11, 4/14, 4/18, 4/19, 4/20, 4/21, 4/25, 4/27, and three times on 5/3 of 2017. All these calls, except the last one on 5/3 were answered by my answering machine.

45. During the last call on 5/3, I picked up the phone, said hello several times, received no response from the caller, and hung up the phone after around twenty seconds.

46. All of the calls from 513-734-5004 were made by or on behalf of Monitronics and Alliance Security in order to sell me alarm monitoring services.

47. According to information obtained from GRS Telecom a/k/a CallerId4U, which was a telecommunications company, the caller ID numbers associated with the calls on 3/10/15, 3/14/15, 3/27/15, and 7/7/15 were assigned to Lucky 7, Inc. PH on the dates of the calls.

48. To the extent that the calls described herein were not made directly by Monitronics, Alliance Security, Defend America, and Lucky 7, Inc. PH, the calls were initiated by companies whose true identities are unknown (the "John Doe Companies" defendants). The complaint will be amended when the identities of the callers are known.

63. The illegal telemarketing calls caused actual injury to me. Among other things, listening to the calls wasted my time. That time could have been used instead to earn money at my occupation.

64. The Defendants' violation of Ohio Rev. Code § 4719 caused me actual injury due to time and expense in trying to determine the identity of the caller.

## UNAUTHORIZED CREDIT INQUIRIES BY ALLIANCE SECURITY

65. On October 3 and October 5, 2016, Alliance Security obtained my credit report from a consumer reporting agency. Both these credit inquiries were performed by Alliance without my knowledge, and without my permission. If Alliance asked for my consent to obtain my credit report, I would not have given consent.

66. Alliance's credit inquires appeared on a recent credit report under a section for "Account Review Inquiries". However, I have never had any account with Alliance and I never entered into a contract with Alliance.

## RELATED LITIGATION

67. On 3/10/14, the Federal Trade Commission obtained a permanent injunction against the Alliance Security, Inc., formerly known as Versatile Marketing Solutions, and Jasjit Gotra. ("FTC injunction"). The injunction prohibits Alliance Security, Gotra, and their representatives from "engaging in, causing others to engage in, or assisting others in engaging in" unlawful telephone calls to numbers on the National Do Not Call registry, calls to persons who have stated that he/she does not wish to be called by the Debtor, and calls that deliver a prerecorded message. A copy of the injunction is available at https://www.ftc.gov/system/files/documents/cases/140312vmsorder.pdf.

68. The Alliance Security has been sued in at least five class actions, and numerous individual plaintiff actions, which have been consolidated in multidistrict litigation in the U.S. District Court for the

Northern District of West Virginia. The oldest of the class actions was filed in 2011. The lawsuits allege that Alliance violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

69. Despite the injunction and the five class action lawsuits, the Alliance Security and Gotra willfully continued to violate the TCPA and state telemarketing law.

70. Each call that is the subject of this litigation violated the FTC injunction.

71. On May 5, 2017, I filed Case No. 2017-CVH-543 in this Court against Monitronics International, Inc., Alliance Security, Inc., Defend America, Inc., Jessica T. Merrick, Rick A. Merrick, Tyler Coon, and others. ("The Prior Lawsuit"). Jasjit Gotra was not named in that case.

72. I voluntarily dismissed the claims against Defend America, Inc., Jessica T. Merrick, Rick A. Merrick, and Tyler Coon from that case.

73. The case was subsequently removed to federal court and is still pending.

74. On July 14, 2017, Alliance Security, Inc. filed for bankruptcy. The claims against Alliance Security, Inc. in the Prior Lawsuit have been stayed indefinitely due to Alliance Security's bankruptcy proceedings.

75. On March 22, 2018, the FTC filed suit again against Gotra and Alliance Security. The case is No. 1:18-cv-10548-GAO in the U.S. District Court for the District of Massachusetts. The suit characterizes Gotra and Alliance Security as "recidivist" violators of the FTC Telemarketing Sales Rule and alleges that they willfully violated the prior FTC injunction.

76. Defend America and Jessica Merrick are also defendants in that FTC lawsuit. The FTC alleges that Defend America made over 403,000 calls to telephone numbers on the national Do Not Call registry within just a four month period.

## CAUSES OF ACTION

## VIOLATION OF THE FEDERAL TELEPHONE CONSUMER PROTECTION ACT ("TCPA") AND OHIO TELEPHONE SOLICITATION ACT

77. Each call I received described in the preceding telegraphs was a telephone solicitation.

78. Each Defendant willfully violated the Federal Telephone Consumer Protection Act and Ohio Telephone Solicitation Act by the actions described in the proceeding paragraphs. Namely,

- the calls were made to a number listed on the national Do Not Call registry (47 U.S.C. § 227(c)); and

- the calls were made by an entity that is not registered as a telemarketer in Ohio (Ohio Rev. Code 4719.02).

However, calls made after the 10/3/2016 call but before 11/19/2016 do not violate the Do Not Call registry regulations.

79. Each call initiated using an artificial or pre-recorded voice also violated 47 U.S.C. § 227(b).

80. None of the Defendants have implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c).

VIOLATION OF THE FEDERAL CREDIT REPORTING ACT ("FCRA")

81. Alliance Security and Gotra willfully violated 15 U.S.C. § 1681b by obtaining my consumer credit report from a consumer reporting agency, under false pretenses and without having a permissible purpose for doing so.

82. An investigator from the Federal Trade Commission alerted me that Alliance Security may have obtained by my credit report without my knowledge or consent and in violation of the FCRA. The FTC investigator asked me to obtain a copy of my own credit report to see whether Alliance had made a credit inquiry regarding me and tell him whether Alliance had made a credit inquiry. Consequently, I became worried that Alliance may have violated my privacy by obtaining my credit report, and so I requested a copy of my credit report from TransUnion.

83. Alliance Security's and Gotra's policy of obtaining credit reports without a permissible purpose caused actual injury to me. For example, my time was expended in checking my credit report at the request of the FTC investigator.

VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT ("OCSPA")

84. Each call was a solicitation to sell me goods or services for purposes that are primarily household or family in nature.

85. Each Defendant was a "supplier" of a "consumer transaction" under Ohio Rev. Code § 1345.01.

86. Each call was an unfair act or practice under Ohio Rev. Code § 1345.02(A). Each call was made by an entity that is not registered as a telemarketer under Ohio Rev. Code § 4719.02.

87. Each call made using an artificial or prerecorded voice contained an additional unfair or deceptive trade practice under Ohio Rev. Code § 1345.02(A) and 16 C.F.R. § 310.4(b)(v).

88. On information and belief, "Home Security Center", "GE Security Pros", "Home Protection Services", "Security Solutions", and "GE Home Security" are not the true names of the companies that initiated any of the calls to me.

89. Every call which I answered or in which a message was left on my answering machine, in which the caller either did not identify the company that initiated the call (including calls where the caller provided a fictitious name for the company) contains an additional violation of the OCSPA. Ohio Rev. Code § 4719.06(A)(1) and 16 C.F.R. § 310.4(d)(1).

90. Every call after my explicit Do Not Call request on 11/21/2016 contains an additional violation of the OCSPA.

91. One call on 5/3/17 contained an additional OCSPA violation because the caller performed an act declared to be an abusive telemarketing act by the federal Telephone Sales Rule ("TSR") at 16 C.F.R. 310.4(b)(1)(iv). Namely, after I answered the call, the telemarketer did not connect me to a sales representative within two seconds of the person's greeting. *See Burdge v. Satellite System Network,* PIF No. 2344, placed in the PIF on 5/12/05, declaring that a violation of any regulation within the TSR by a supplier is an unfair and deceptive act in violation of the OCSPA.

92. Each call in which the caller said the company initiating the call is "GE Security Pros", "General Electric Security Pros", or "GE Home Security" contains an additional OCSPA violation because the caller falsely claimed that it is affiliated with General Electric. Ohio Rev. Code § 1345.02(B)(9).

93. Alliance Security committed an unfair or deceptive trade practice by attempting to perform an alarm installation without providing upon demand a written copy of the contract prior to performing the installation.

## PATTERN OF CORRUPT ACTIVITY IN VIOLATION OF OHIO REV. CODE §§ 2923.31 - .34

94. Each Defendant committed a pattern of corrupt activity under Ohio Rev. Code § 2923.32.

95. Any violation of Ohio Rev. Code § 4719.02, 4719.05, or 4719.06; division (C), (D), or (E) of § 4719.07; § 4719.08; or § 4719.09(A) is a corrupt activity under Ohio Rev. Code § 2923.31(I)(2)(a) and § 2923.32.

## INVASION OF PRIVACY

96. The persistent, unwanted telephone calls made by, or on behalf of, the Defendants as described herein invaded my right to privacy by unreasonable intrusion into the solitude and seclusion of my home.

## LIABILITY OF GOTRA FOR ACTIONS OF ALLIANCE SECURITY AND ITS AGENTS

### Agency by actual authority

97. Each call not made directly by Alliance Security was made by an agent of Alliance Security acting within the scope of its appointment as agent. Under the terms of the agency appointment, the agent was appointed to act on the principal's behalf and subject to the principal's control.

98. Gotra authorized Alliance Security's agents to make telephone calls under circumstances in which such calls violate 47 U.S.C. § 227 and the Ohio Consumer Sales Practices Act.

99. Gotra knew that Alliance Security's agents were not registered as telephone solicitors in Ohio as required by Ohio Rev. Code § 4719, but nevertheless authorized them to make telephone solicitations to Ohioans.

### Agency by apparent authority

100. I formed a reasonable belief that each caller had authority to act on behalf of Alliance Security as its agent, and was acting within the scope of that authority, based on the actions of Alliance Security, including but not limited to the following: Alliance Security gave the agents permission to hold themselves out as authorized dealers or sales representatives of Alliance Security; Alliance Security gave the agents access to their sales and scheduling systems.

### Agency by ratification

101. Gotra had the power to terminate Alliance Security's relationship with its telemarketing agents.

102. Alliance Security and Gotra were aware that each agent was making telephone solicitations under circumstances in which such call violate 47 U.S.C. § 227 and the Ohio Consumer Sales Practices Act.

103. While having this knowledge, Gotra failed to terminate Alliance Security's relationship with the agents, and instead willfully continued to receive the benefits of the agent's unlawful telemarketing calls.

### Liability

104. Alliance Security is liable for the actions of its agents.

105. Alliance Security is also liable because it was negligent in failing to supervise or otherwise control the actions of its agents.

106. Alliance Security is also liable because it delegated to its agents its duty to use due care to protect my right to privacy under telemarketing law and its agents failed to perform that duty.

107. Jasjit Gotra, as CEO and majority owner of Alliance Security, had complete control over the actions of Alliance Security.

108. Violation of the TCPA and state telemarketing law was an integral part of Alliance Security's business plan and business model. Gotra personally formulated the business plan and business model of Alliance Security to willfully violate the TCPA and state telemarketing laws.

109. Gotra personally directed Alliance Security to violate the TCPA and state telemarketing law.

110. Gotra personally became aware of rampant consumer complaints of violations of the TCPA in calls made on behalf of Alliance Security by Defend America and other agents of Alliance Security, and Gotra personally made the decision by Alliance Security not to terminate Alliance's business relationship with Defend America and said other agents.

111. Gotra was personally enjoined by the FTC injunction and Gotra personally violated the terms of that injunction through the telemarketing calls described in this lawsuit.

112. Another part of the business plan formulated by Gotra was that Alliance Security would derive as much profit as it could for Gotra and Alliance's other shareholders by willfully violating the TCPA and stalling the numerous TCPA lawsuits against Alliance for as long as possible, and then when the lawsuits could be stalled no longer, Alliance would attempt to escape liability by declaring bankruptcy.

113. Gotra personally directed Alliance Security to obtain consumer credit reports for potential customers of Alliance Security without the knowledge or consent of the potential customers and in violation of the FCRA.

114. Gotra is personally liable for the actions of Alliance Security.

## CIVIL CONSPIRACY TO CAUSE TORTIOUS INJURY

115. Alliance Security entered into agreements with each of its sales agents and dealers (including but not limited to Defend America and the other John Doe Companies) for the purpose of deriving profit by intentionally causing injury to Ohioans by making telephone calls that invade the call recipient's right to privacy by unreasonable intrusion. The actions described in this Complaint were performed in accordance with those agreements. As a result of following those agreements, Alliance Security and its sales agents and dealers intentionally and maliciously caused injury to the recipients of their calls.

## APPLICABILITY OF OHIO'S SAVING STATUTE

116. The claims against Defend America LLC, Jessica T. Merrick, Rick A. Merrick, and Tyler Coon in the Prior Lawsuit were voluntarily dismissed without prejudice, and therefore the claims failed otherwise than on the merits. This lawsuit has been brought less than one year after the date in which my claims failed otherwise than on the merits, and therefore the claims may be brought in this lawsuit under Ohio Rev. Code § 2305.19(A).

## CIRCUMSTANCES WHICH JUSTIFY TREBLE AND PUNITIVE DAMAGES

117. The Defendants performed the actions described in the preceding paragraphs willfully and knowing that the actions violate the TCPA and Ohio law. The Defendants performed these actions with the purpose of deriving profit from causing tortious injury, namely invading my right to privacy, and the Defendants should have reasonably expected that their actions would cause this injury. The Defendants performed these actions with willful, reckless disregard of my rights, and hence the actions demonstrate malice.

WHEREFORE, the Plaintiff asks that the Court grant him all the following relief:

1. Award the Plaintiff $1500 for each violation of 47 U.S.C. § 227(b), $1500 for each call which violated 47 U.S.C. § 227(c), and $200 for each violation of Ohio Rev. Code § 1345.02. See 47 U.S.C. § 227(b)(3), § 227(c)(5), Ohio Rev. Code § 1345.09(B), and *Charvat v. NMP, LLC*, 656 F. 3d 440, 448-452 (6th Cir 2011).

Jasjit Gotra is jointly and severally liable for every call.

Defend America, Jessica T. Merrick, Rick A. Merrick, Tyler Coon, and Gotra are jointly and severally liable for each call initiated by Defend America LLC.

2. Order Jasjit Gotra to pay Plaintiff $1000 in damages under 15 U.S.C. § 1681n(a)(1) plus punitive damages of at least $7000 under 15 U.S.C. § 1681n(a)(2).

3. Pursuant to Ohio Rev. Code § 2923.34(B), enter an appropriate order to ensure that the violation of § 2923.32 will not continue or be repeated.

4. Pursuant to Ohio Rev. Code § 2923.34(E), treble any actual damages.

5. Issue a permanent injunction prohibiting each Defendant from violating 47 U.S.C. § 227, Ohio Rev. Code § 1345, and Ohio Rev. Code § 4719.

6. Award the Plaintiff costs, attorney fees, and interest.

7. Such further relief as may be appropriate.

Respectfully submitted,

Vincent Lucas
P.O. Box 272
Amelia, OH 45102
(513) 947-1695
vincentlucaslegal@gmail.com
Plaintiff